# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into by and among the undersigned, WCP Fund I LLC ("WCP"), DP Capital LLC ("DPCL"), WCP Fund I LLC in its Capacity as Servicer for SF NU, LLC ("SNL"), WCP Fund I LLC in its Capacity as Servicer for 1Sharpe Opportunity Intermediate Trust ("1Sharpe"), WCP Fund I LLC in its Capacity as Servicer for Pacific RBLF Funding Trust ("PRFT"), and WCP Fund I LLC in its Capacity as Servicer for U.S. Bank National Association, not in its individual capacity but solely as trustee of HOF Grantor Trust 1 ("HOF") (WCP, DPCL, SNL, 1Sharpe, PRFT and HOF being collectively known as the "WCP Parties"), on the one hand, and Richard Timothy Cunningham, Jr. ("Mr. Cunningham"), Jesyl Crowdy-Volkens a/k/a Je'syl Crowdy-Volkens ("Ms. Volkens"), Elaine Marian Cunningham ("Ms. Cunningham"), 1716 R Street Flats LLC ("1716 R St."); The Z Flats L.L.C. ("Z Flats"), 1605 17th Street Flats LLC ("1605 17th St."); 1601 17th Place Flats LLC ("1601 17th Pl."), 1609 17th Place Flats LLC ("1609 17th Pl."), The Lauravin Luxury Apartment Homes III L.L.C. ("Lauravin III"), The Washingtonian L.L.C. ("Washingtonian"), 1616 27th Street Flats L.L.C. ("1616 27th St."), The Lerae Towers, LLC ("Lerae II"), The Lerae Towers, LLC ("Lerae"), 4220 Ninth Street Flats LLC ("4220 Ninth St.") and 4649 Hillside Road Flats LLC ("4649 Hillside Rd.") (Mr. Cunningham, Ms. Volkens, Ms. Cunningham, 1716 R St., Z Flats, 1605 17th St., 1601 17th Pl., 1609 17th Pl., Lauravin III, Washingtonian, 1616 27th St., Lerae II, Lerae, 4220 Ninth St. and 4649 Hillside Rd. being collectively known as the "Cunningham Parties" and each sometimes known as a "Cunningham Party") (the WCP Parties and the Cunningham Parties being collectively known as the "Settling Parties" and each a "Settling Party"), being effective on the date on which this agreement is approved by the United States Bankruptcy Court for the District of Columbia (the "Effective Date").

**WHEREAS**, each of the Cunningham Parties, excepting Mr. Cunningham, Ms. Cunningham, and Ms. Volkens (collectively, the "Debtor Parties"), have borrowed money from one or more of the WCP Parties; and

**WHEREAS**, each of the Debtor Parties is a debtor in bankruptcy, with their respective cases being administratively consolidated as Case Number 23-17-ELG (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"); and

**WHEREAS**, in connection with the Bankruptcy Case, the WCP Parties have brought suit against each of the Cunningham Parties, excepting Ms. Cunningham, alleging, *inter alia*, racketeering, fraud, negligent misrepresentation, and other causes of action, with said suit being Case Number 23-10012-ELG (the "Adversary Proceeding") in the Bankruptcy Court; and

**WHEREAS**, Ms. Cunningham and Mr. Cunningham have both guaranteed portions – but not the whole – of the Cunningham Parties' loan obligations to the WCP Parties; and

**WHEREAS**, the Settling Parties share a mutual desire to settle the various disputes now existing between and amongst them;

**NOW THEREFORE**, in consideration of the mutual promises set forth below and good and valuable consideration, the adequacy, and sufficiency of which are hereby acknowledged, the disputes between the Settling Parties shall be compromised subject to the following terms and conditions:

1. **INCORPORATION OF PREAMBLES.** The recitals, definitions, and other terms above are incorporated herein and made a part of this Agreement.

2. **PLANS OF REORGANIZATION.** The Debtor Parties shall cause to filed, in the Bankruptcy Court, plans of reorganization, pursuant Subchapter II of Chapter 11 of Title 11 of the United States Code, substantially providing for the following:

        a.      1716 R St. shall cause to be deeded to WCP, or the designee of WCP, the real property commonly known as 1716 R Street, SE, Washington, DC 20020 (the "1716 R St. Property"), at the time of WCP's election (but in no event later than five years after the Effective Date), in exchange for WCP (i) paying the sum of $5,250.00 to the estate of 1716 R St.; and (ii) paying administrative expenses, incurred on account of said transaction, in a sum not to exceed $250.00, with said administrative expenses payable to the Office of the United States Trustee, the Bankruptcy Court, the clerk of the Bankruptcy Court, the United States Treasury, or such other governmental entity as may be so designated under the correlative plan of reorganization;

        b.      1605 17th St. shall cause to be deeded to WCP, or the designee of WCP, the real property commonly known as 1605 17th Street, SE, Washington, DC 20020 (the "1605 17th St. Property"), at the time of WCP's election (but in no event later than five years after the Effective Date), in exchange for WCP (i) paying the sum of $5,250.00 to the estate of 1605 17th St.; and (ii) paying administrative expenses, incurred on account of said transaction, in a sum not to exceed $250.00, with said administrative expenses payable to the Office of the United States Trustee, the Bankruptcy Court, the clerk of the Bankruptcy Court, the United States Treasury, or such other governmental entity as may be so designated under the correlative plan of reorganization;

        c.      Washingtonian shall cause to be deeded to WCP, or the designee of WCP, the real property commonly known as 319 3rd St, SE, Washington, DC 20003 (the "Washingtonian Property"), at the time of WCP's election (but in no event later than five years after the Effective Date), in exchange for WCP (i) paying the sum of $5,250.00 to the estate of Washingtonian; and (ii) paying administrative expenses, incurred on account of said transaction, in a sum not to exceed $250.00, with said administrative expenses payable to the Office of the United States Trustee, the

Bankruptcy Court, the clerk of the Bankruptcy Court, the United States Treasury, or such other governmental entity as may be so designated under the correlative plan of reorganization;

        d.      1609 17th Pl. shall cause to be deeded to WCP, or the designee of WCP, the real property commonly known as 1609 17th Place, SE, Washington, DC 20020 (the "1609 17th Pl. Property"), at the time of WCP's election (but in no event later than five years after the Effective Date), in exchange for WCP (i) paying the sum of $5,250.00 to the estate of 1609 17th Pl.; and (ii) paying administrative expenses, incurred on account of said transaction, in a sum not to exceed $250.00, with said administrative expenses payable to the Office of the United States Trustee, the Bankruptcy Court, the clerk of the Bankruptcy Court, the United States Treasury, or such other governmental entity as may be so designated under the correlative plan of reorganization;

        e.      Lerae II shall cause to be deeded to WCP, or the designee of WCP, the real property commonly known as 1241 Raum Street, NE, Washington, DC 20002 (the "Lerae II Property"), at the time of WCP's election (but in no event later than five years after the Effective Date), in exchange for WCP (i) paying the sum of $5,250.00 to the estate of Lerae II; and (ii) paying administrative expenses, incurred on account of said transaction, in a sum not to exceed $250.00, with said administrative expenses payable to the Office of the United States Trustee, the Bankruptcy Court, the clerk of the Bankruptcy Court, the United States Treasury, or such other governmental entity as may be so designated under the correlative plan of reorganization;

        f.      The WCP Parties shall release any and all liens in their favor, together with the underlying monetary obligations secured by such liens, on the real property assets of (i) 1616 27th St.; (ii) Z Flats; (iii) 1601 17th Pl.; (iv) 4649 Hillsdale Rd.; and (v) Lauravin III;

        g.      SNL shall maintain its existing lien on the property of Lerae, commonly known as 537 Peabody Street, NW, Washington, DC 20011 (the "Lerae Property"), but the terms

thereof shall be ~~refinanced~~ restructured such that (i) the total indebtedness owed to SNL by Lerae, and secured by the Lerae Property, is $325,000.00 (the "Lerae Debt"); (ii) the Lerae Debt shall accrue interest at the rate of 12% per annum, with said interest compounding ~~monthly~~annually; (iii) the Lerae Debt shall be payable, in full, one year from the date on which the correlative plan of reorganization is confirmed; and (iv) the Lerae Debt shall continue to be secured by an existing deed of trust in favor of SNL, with the provisions hereof being regarded as a ~~refinancing~~ restructuring of said debt and *not* as a new loan or new extension of credit;

   h. In addition to, and not in lieu of, any of the foregoing terms, each of the Debtor Parties shall jointly execute a balloon promissory note in favor of WCP, with said note (the "Debtor Note") to (i) be in the sum of $3,000,000.00; (ii) accrue interest at the rate of ~~1~~2% per annum~~, with said interest accruing only on the first $500,000 of principal due~~, compounding ~~monthly~~annually; (iii) be payable, in full five years from the date on which the *first* plan of reorganization of any of its makers is confirmed (the "Debtor Note Making Date"); (iv) be unsecured; and (v) provide for an early payment discount, in the sum of $2,500,000.00, if the Debtor Note is paid in full – with accrued interest – on or before the third anniversary of the Debtor Note Making Date;

   i. The foregoing provisions of this Section 2 notwithstanding, each of the Debtor Parties must secure the affirmative vote of WCP (either individually or in its capacity as servicer for one or more of the WCP Parties) on each of the Debtor Parties' plans of ~~reorganization~~reorganization (or if WCP is deemed to reject any such Debtor Parties' Plan, WCP declines to object to said plan); provided such plans contain no terms to the economic detriment of WCP, are consistent with the provisions of this Section 2, and otherwise comply with governing law, however, WCP shall not unreasonably withhold such affirmative vote and shall vote for any

plan substantially in compliance with the above. Should *any* of the Debtor Parties fail to secure the affirmative vote of WCP, the releases set forth herein shall be void *ab initio*.

3. **GUARANTY.** Each of Mr. Cunningham, Ms. Cunningham, and Ms. Volkens shall guarantee the Debtor Note (the "Guaranty").

4. **FORM OF DOCUMENTS.** The form of the Debtor Note and the Guaranty are appended hereto as Exhibits A and B, respectively, and shall only be modified to properly reflect the date(s) of their respective executions.

5. **RELEASE OF DEBTOR PARTIES.** For consideration of the covenants set forth herein, the sufficiency of which is hereby expressly acknowledged, the WCP Parties for themselves, their successors, and their assigns (collectively, the "Releasing WCP Parties") conditionally remise, waive, satisfy, release, acquit, and forever discharge the Debtor Parties and each of their present, former, and future heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouses, attorneys, insurers, agents, representatives, predecessors, successors, assigns, owners, officers, directors and/or each person or entity acting or purporting to act for them or on their behalf, but *not* including Mr. Cunningham, Ms. Cunningham, and/or Ms. Volkens (collectively the "Debtor Released Parties"), and each of them respectively, from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever that the Releasing WCP Parties have or may have against the ~~Released~~

Debtor Released Parties, for, upon, or by reason of any matter, cause or thing, whatsoever, in law or equity, including, without limitation, the claims made or which could have been made in the Adversary Proceeding, at any time from the beginning of time through the Effective Date, *except* as follows:

  a. Within three days of the approval of this Settlement Agreement, the WCP Parties shall dismiss the Adversary Proceeding without prejudice.

  ~~a.~~b. None of Mr. Cunningham, Ms. Cunningham, nor Ms. Volkens are released from any obligation, nor otherwise relieved, remised, acquitted, or discharged of any obligation, whatsoever, pursuant to the provisions of this Section 5;

  ~~b.~~c. Lerae is not relieved of its obligation to SNL – or to any of the other WCP Parties – pursuant to this Section 5, *but* the obligation of Lerae shall be modified per the provisions of Section 2(g) hereof;

  ~~c.~~d. None of the Debtor Parties shall be released from any obligation, nor otherwise relieved, remised, acquitted, or discharged of any obligation, whatsoever, pursuant to the provisions of this Section 5, until such time as all of the Debtor Parties satisfy the rigors of Section 2 hereof, and the failure of any one of the Debtor Parties to confirm a plan of reorganization (with the acceptance thereof by WCP) pursuant to Section 2 hereof shall prevent *all* of the Debtor Parties from not being released, relieved, remised, acquitted, and/or discharged of obligations to the WCP Parties; and

  e. ~~None of the Cunningham Parties other than the Debtor Parties are released, relieved, remised, acquitted, and/or discharged of their obligations under this Agreement.~~ Upon satisfaction of the Debtor Note and the Lerae Debt, the Release in Section 5 shall apply to Mr. Cunningham, Ms. Cunningham, and Ms. Volkens.

    d.f. So long as the Cunningham Parties are not in default under this Settlement Agreement, the WCP Parties shall forbear from taking any collection action against the Cunningham Parties, including but not limited to refiling the Adversary Proceeding, *provided, however*, that proceeding with recourse permitted by any plan of reorganization confirmed by the Bankruptcy Court shall not constitute "collection action.".

    6. **RELEASE OF WCP PARTIES.** For consideration of the covenants set forth herein, the sufficiency of which is hereby expressly acknowledged, the Cunningham Parties for themselves, their successors, and their assigns (collectively, the "Releasing Cunningham Parties") absolutely and unconditionally remise, waive, satisfy, release, acquit, and forever discharge the WCP Parties and each of their present, former, and future heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouses, attorneys, insurers, agents, representatives, predecessors, successors, assigns, owners, officers, directors and/or each person or entity acting or purporting to act for them or on their behalf (collectively the "WCP Released Parties"), and each of them respectively, from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever that the Releasing Cunningham Parties have or may have against the Released WCP Parties, for, upon, or by reason of any matter, cause or thing, whatsoever, in law or equity, including, without limitation, the claims made or which could

have been made in the Bankruptcy Case, at any time from the beginning of time through the Effective Date

7. **NO RELEASE OF THIS AGREEMENT.** For the avoidance of ambiguity, and understanding such to be otherwise provided for herein, no person shall be released of the obligations set forth in this Agreement.

8. **COSTS AND ATTORNEYS' FEES.** The Settling Parties shall each bear their own attorneys' fees.

9. **SETTLEMENT NOT AN ADMISSION OF LIABILITY.** The Settling Parties understand and agree that this Agreement contains a compromise settlement of disputed claims, and that the making of this Agreement shall not be deemed or construed to be an admission by any party of any liability or fault of any kind by either party, which fault or liability is expressly denied.

10. **INTEGRATION CLAUSE; NO ORAL MODIFICATION.** This Agreement contains the entire agreement between and among the parties and is intended as a full and final expression of the settlement and release of the claims set forth herein, and may not be modified, amended or terminated except by a written agreement specifically referring to this Agreement and signed by the parties sought to be bound by the modification, amendment, or termination.

11. **AUTHORITY.** Each of the individuals signing this Agreement represents that he or she has full authority and capacity to execute this Agreement on behalf of the party for which he or she is signing and to bind that party to this Agreement.

12. **ATTORNEY REVIEW.** The Settling Parties represent that they have each reviewed this Agreement and have had the opportunity to consult with legal counsel, entering into this Agreement freely and voluntarily and after due thought and consideration to all of the relevant facts and circumstances. The Settling Parties acknowledge that this Agreement is fair, reasonable

and is not the result of fraud, duress, coercion, pressure, or undue influence exercised by any person or organization upon the other and that the Settling Parties have not relied and do not rely upon any statements, inducements, promises or representations made by any other of the Settling Parties, or their agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement.  The Settling Parties further acknowledge that they have approved and entered into this Agreement, knowingly, freely and voluntarily.

13. **BINDING NATURE.**  The Settling Parties agree that the statements, representations, agreements, and covenants contained herein are contractual in nature and are not mere recitations of fact, and that the agreements and covenants herein shall be binding upon the parties and their respective predecessors, successors and assigns.

14. **CONSTRUING AGREEMENT.**  This Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been drafted initially by counsel for one of the parties.  It is acknowledged that all parties have contributed substantially to the preparation of this Agreement.

15. **SEVERABILITY.**  In case any term of this Agreement shall be invalid, illegal, or unenforceable, the remaining provisions of this Agreement shall not in any way be affected or impaired.  Upon determination that any such term is invalid, illegal, or unenforceable, that term shall be read so as to affect the original intent of the parties as nearly as possible.

16. **HEADINGS.**  The section and subsection headings have been included for convenience only, are not part of this Agreement, and shall not be taken into account in the interpretation of any provision hereof.

17. **CHOICE OF LAW.**  This Agreement shall be construed in accordance with the laws of the District of Columbia without reference to any conflict of laws rules. Any dispute concerning

this Agreement or the terms hereof shall be subject to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Columbia or, should such court lack subject matter jurisdiction, and only if such court should lack subject matter jurisdiction, the state courts of Maryland situated within Montgomery City. The Settling Parties each irrevocably consent to the jurisdiction of said courts. The election of a foreign state court, as an alternate forum should the United States Bankruptcy Court for the District of Columbia lack jurisdiction, is not a typographical error.

18.    **COUNTERPART.**  This Agreement may be signed in counterpart copies, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  This Agreement may also be executed in facsimile form or via reputable purveyor of electronic signatures (with DocuSign expressly being one such reputable purveyor).

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound hereby, have executed and delivered this Settlement Agreement.