**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | ) |
| | ) |
| 1716 R Street Flats LLC; | ) Case Nos. 23-00017 to 23-00028-ELG |
| The Z Flats L.L.C.; | ) |
| 1605 17th Street Flats LLC; | ) |
| 1601 17th Place Flats LLC; | ) Chapter 11 |
| 1609 17th Place Flats LLC; | ) (Jointly Administered under |
| The Lauravin Luxury Apt. Homes III L.L.C.; | ) Case No. 23-00017-ELG) |
| The Lauravin Luxury Apartment Homes III L.L.C.; | ) Pleading relates to 1609 17th Place Flats LLC and The Lauravin Luxury Apartment Homes III L.L.C. |
| 1616 27th Street Flats L.L.C. | ) |
| Lerae Towers II, LLC; | ) |
| The Lerae Towers, LLC; | ) |
| 4220 Ninth Street Flats LLC; | ) |
| 4649 Hillside Road Flats LLC, | ) |
| | ) |
| Debtors and Debtors in Possession | ) |
| | ) |
| | ) |
| | ) |

**1609 17TH PLACE FLATS LLC AND THE LAURAVIN LUXURY APARTMENT HOMES III L.L.C.'S THIRD AMENDED JOINT PLAN OF REORGANIZATION**

1609 17th Place Flats LLC and The Lauravin Luxury Apartment Homes III L.L.C. (each a "Debtor," and collectively, the "Debtors"), propose this Debtors' Third Amended Joint Plan of Reorganization (the "Plan") pursuant to section 1121 of Title 11 of the United States Code.

## ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Rules of Construction

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

1

### B.    Definitions

1.1.    ***Administrative Claim*** means a Claim for costs and expenses of administration of these Chapter 11 Cases under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), and entitled to priority under Bankruptcy Code section 507(a)(2), including: (a) any actual and necessary costs and expenses incurred after the Petition Date to preserve the Estates and operate the business of the Debtors; and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court.

1.2.    ***Administrative Claims Bar Date*** means the first Business Day that is thirty (30) days following the Confirmation Date.

1.3.    ***Allowed Claim*** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court; (b) that either (1) has been Scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, or (2) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (c) that is expressly allowed in a liquidated amount in this Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtors, or any other party in interest (1) has not interposed a timely objection or (2) has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; provided, further, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period as may be fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or this Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Debtors as being an Allowed Claim.

1.4.    ***Allowed [___] Claim*** means an Allowed Claim of the particular type or Class described.

1.5.    ***Assets*** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates, and all proceeds thereof, existing as of the Effective Date.

1.6.    ***Assumption List*** means the list attached as Exhibit A, as may be subsequently amended or supplemented.

1.7.    ***Avoidance Actions*** means Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551, and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

1.8.    ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or

Interest entitled to vote to accept or reject this Plan.

1.9.  ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

1.10.  ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Columbia, or any other court with jurisdiction over the Chapter 11 Case.

1.11.  ***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Case or proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

1.12.  ***Business Day*** means any day, other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

1.13.  ***Cash*** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

1.14.  ***Causes of Action*** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims (as defined in Bankruptcy Code section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, that the Debtors and/or Estate may hold against any Entity.

1.15.  ***Chapter 11 Cases*** means the cases under chapter 11 of the Bankruptcy Code commenced by Debtors in the Bankruptcy Court.

1.16.  ***Claims Bar Date*** means the bar date for filing Proofs of Claim for Claims arising prior to the Petition Date against each of the Debtors in their respective Chapter 11 Cases, which dates are:

1.17.  ***Claims Objection Deadline*** means the first Business Day that is thirty (30) days following the Effective Date, or such later date as the Court may set pursuant to the request of the Debtors.

1.18.  ***Class*** means a category of Holders of Claims or Interests, as described in Article II hereof.

1.19.  ***Collateral*** means any property or interest in property of the Debtors' Estate subject to a Lien to secure the payment or performance of a Claim.

1.20.  ***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order.

1.21.  ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the Chapter 11 Case.

1.22. ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.23. ***Confirmation Order*** means the order entered by the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129 in the Chapter 11 Case.

1.24. ***Consummation or Consummate*** means the occurrence of, or to achieve, the Effective Date.

1.25. ***Contingent*** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

1.26. ***Creditor*** means any Entity that holds a Claim against any of the Debtors.

1.27. ***Cunningham Contributions*** means the contributions made by Richard Cunningham to fund the Lauravin Reserve.

1.28. ***Debtors*** means 1609 17th Place Flats LLC and The Lauravin Luxury Apartment Homes III L.L.C.

1.29. ***Debtor Affiliates*** means 1716 R Street Flats LLC; The Z Flats L.L.C.; 1605 17th Street Flats LLC; 1601 17th Place Flats  LLC; The Lerae Towers, LLC; Lerae Towers II, LLC; The Washingtonian L.L.C.; 1616 27th Street Flats L.L.C.; 4220 Ninth Street Flats LLC; and 4649 Hillside Road Flats LLC

1.30. ***Disallowed*** means, with respect to a Claim, or any portion thereof, that such Claim (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed, or unliquidated, and as to which no Proof of Claim has been filed by the applicable Claims Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Claims Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

1.31. ***Disputed Claim*** means a Claim, or any portion thereof, that has not been Allowed pursuant to this Plan or a Final Order, and:

      (a)    if no Claim has been filed, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed on the Schedules, as such may be amended by the Debtors from time to time, as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

      (b)    if a Claim has been filed, or deemed to have been filed, by the applicable Claims Bar Date (i) a Claim for which a corresponding Claim has been listed on the

Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount of such Claim as asserted in the Claim varies from the amount of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed in accordance with this Plan and applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order;

(c)    if a request for payment of an Administrative Claim has been filed or deemed to have been filed by the Administrative Claims Bar Date, an Administrative Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed in accordance with this Plan and applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order;

(d)    for which a Claim was required to be filed by order of the Bankruptcy Court, but as to which a Claim was not timely or properly filed; or

(e)    that is disputed in accordance with the provisions of this Plan.

1.32.  ***Disputed [_____] Claim*** means a Disputed Claim of the type described.

1.33.  ***Disputed Claim Amount*** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim as may have been modified by Final Order of the Bankruptcy Court; (ii) an amount agreed to by the Debtors and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtors and the Holder of such Disputed Claim or (ii) zero; or (c) if the Claim was listed on the Schedules as unliquidated, contingent, or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

1.34.  ***Distribution*** means any distribution pursuant to this Plan to the Holders of Allowed Claims.

1.35.  ***Distribution Date*** means 45 days after the Effective Date.

1.36.  ***Effective Date*** means the Business Day this Plan becomes effective as provided in Article VII hereof.

1.37.  ***Entity*** has the meaning set forth in Bankruptcy Code section 101(15).

1.38.  ***Estate*** means the estate of the Debtors created under Bankruptcy Code section 541.

1.39.  ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, or filed separately with the Clerk of the Bankruptcy Court in connection with the hearing on the Confirmation of this Plan or the approval of the Disclosure Statement.

1.40.  ***Federal Judgment Rate*** means the rate of interest applicable from time to time pursuant to 28 U.S.C. § 1961.

1.41.  ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

1.42.  ***Final Fee Applications*** means the final requests for payment of Professional Fee Claims.

1.43.  ***Final Order*** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.44.  ***General Unsecured Claim*** means a Claim that is not an Administrative Claim, a Secured Claim, a Priority Tax Claim, or a Non-Tax Priority Claim.

1.45.  ***Governmental Unit*** has the meaning set forth in Bankruptcy Code section 101(27).

1.46.  ***Holder*** means an Entity holding a Claim or Interest.

1.47.  ***Petition Date*** means January 16, 2023.

1.48.  ***Impaired*** means, when used in reference to a Claim, Interest, or Class, a Claim, Interest, or Class that is impaired within the meaning of Bankruptcy Code section 1124 of the Bankruptcy Code.

1.49.  ***Interests*** means the legal, equitable, contractual, and other rights of any Entity with respect to any capital stock, membership interest, or other ownership interest in the Debtors, whether or not transferable, and all options, warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtors.

1.50.  ***Lauravin Property*** means that certain real property located at 1629 28th Street, SE Washington, DC 20020, Lot 0030, Square 5585, and all improvements thereon.

1.51.  ***Lauravin Reserve*** means $2,500 to be paid to The Lauravin Luxury Apartment Homes III L.L.C. by Richard Cunningham.

1.52.  ***Lien*** shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance

of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

1.53. *[_____] Loan Documents* means the loan documents between the Debtors, or any single Debtor or group of Debtors, and the respective counter-party entered into prior to the Petition Date.

1.54. *Local Rules* means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Columbia.

1.55. *Non-Tax Priority Claim* means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a).

1.56. *Professional Fee Claims* means the Claims of professionals engaged by the Debtors pursuant to Sections 327 and/or 328 of the Bankruptcy Code.

1.57. *Scheduled* means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules, as they have been, or may be, amended.

1.58. *Schedules* means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and the Bankruptcy Rules, as such schedules have been or may be further modified, amended, or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.59. *Secured Claim* means a Claim that is secured by Collateral owned by the Debtors, subject to Section 506(a) of the Bankruptcy Code.

1.60. *Second Secured Claim of WCP Fund I LLC* shall mean the allowed lien of WCP Fund I LLC which is secured against the 1609 Property and which is secured by a junior lien against the Lauravin Property.

1.61. *Tax Claim* means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtors, including income and employment taxes and any related penalties or interest.

1.62. *Taxes* means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

1.63. *Tenant Leases* means any unexpired lease with a tenant of the Debtor.

1.64. *Unclassified Claims* means Administrative Claims and Priority Tax Claims.

1.65. *Unimpaired* means, when used in reference to a Claim, Interest, or Class, a Claim, Interest, or Class that is not impaired within the meaning of Bankruptcy Code section 1124.

1.66.  ***U.S. Trustee*** means the Office of the United States Trustee for the District of Columbia.

1.67.  ***WCP Fund I LLC*** means WCP Fund I LLC.

1.68.  ***WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust*** means WCP Fund I LLC in its capacity as servicer for Pacific RBLF Funding Trust.

1.69.  ***WCP Entities*** shall mean WCP Fund I LLC and WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust.

1.70.  ***Reserves*** means the 1609 WCP Reserve and the Lauravin Reserve.

1.71.  ***1609 WCP Reserve*** means $5,250.00 to be paid to 1609 17th Place Flats LLC by WCP Fund I LLC within 10 days of entry of the Confirmation Order, *provided* WCP Fund I LLC may cause any third party to pay the 1609 WCP Reserve.

1.72.  ***1609 Property*** means that certain real property located at 1609 17th Place, SE Washington, DC 20020, Lot 0035, Square 5596, and all improvements thereon.

### C.    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply, irrespective whether the Bankruptcy Case is pending at the time such computation is made.

### D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), and except as otherwise provided herein or therein, the laws of the District of Columbia shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, without giving effect to the conflicts of law principles thereof.

### E.    Exhibits

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.  To the extent any Exhibit is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

## ARTICLE II.    CLASSIFICATION, IMPAIRMENT, AND TREATMENT OF CLAIMS AND INTERESTS

### A.    CLASSIFICATION AND IMPAIRMENT OF CLAIMS AND INTERESTS

#### 1. *Introduction*

All Claims and Interests, except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

Joint and Several Claims are classified in both cases, but the holders of such Joint and Several Claims may recover only once on such Claims.  A Creditor holding a Joint and Several Claim shall be issued one promissory note on account of such Claim upon which the Consolidated Debtor and Thoburn will be jointly and severally liable.

#### 2. *Classification and Impairment*

The following Classes are established and are Impaired or Unimpaired, as indicated below:

##### a) *Claims*

| Class Number | Description | Impairment |
|---|---|---|
| Class 1A | Secured Claim of Federal National Mortgage Association against The Lauravin Luxury Apartment Homes III L.L.C. | Class 1A is impaired under the Plan |
| Class 1B | Partially Secured Claim of WCP Fund I LLC against The Lauravin Luxury Apartment Homes III L.L.C. | Class 1B is impaired under the Plan |
| Class 1C | Unsecured Claims against The Lauravin Luxury Apartment Homes III L.L.C. | Class 1C is impaired under the Plan |

| Class 2A | Secured Claim of WCP Fund I LLC against 1609 17th Place Flats LLC | Class 2A is impaired under the Plan |
|---|---|---|
| Class 2B | Second Secured Claim of WCP Fund I LLC against 1609 17th Place Flats LLC | Class 2B is impaired under the Plan |
| Class 2C | Unsecured Claims against 1609 17th Place Flats LLC | Class 2C is impaired |
| Class 3 | Equity  Interests | Class 3 is unimpaired under the Plan |

### A.     TREATMENT OF CLAIMS AND INTERESTS

#### 1. *Unclassified Claims*

In accordance with section 1123(a)(1) of the Bankruptcy Code, certain Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth immediately below.

#### a) *Administrative Claims*

Provided that an Administrative Claim has not been paid prior to the Effective Date, on, or as soon as reasonably practicable after the Effective Date that an Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which such Holder and the Debtors shall have agreed upon in writing.  Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan.  Except for Professional Fee Claims, any Person seeking allowance or payment of an Administrative Claim shall serve and file a motion seeking allowance of such Claim not later than thirty (30) days following the Confirmation Date.  **The failure to file a motion seeking the allowance of any Administrative Claim by the thirtieth (30th) day following the Confirmation Date shall constitute a bar against the assertion or collection of any such Administrative Claim, and shall relieve the Debtors from any liability, responsibility, or obligation with respect to such Administrative Claim.  Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Administrative Claim (other than Professional Fee Claims) that is not filed by the thirtieth (30th) day following the Confirmation Date.  The Debtors shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed motion for the allowance or payment of any Administrative Claim (other than Professional Fee Claims).**

### b)  Priority Tax Claims

The Debtors do not believe that any Priority Tax Claims exist in these Cases. To the extent that such claims are discovered to exist, provided that a Priority Tax Claim has not been paid prior to the Effective Date, on, or as soon as reasonably practicable after, the Distribution Date immediately following the date a Priority Tax Claim becomes an Allowed Priority Tax Claim, but in no event later than the date that is five (5) years after the Petition Date, a Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, (i) Cash in an amount equal to the aggregate principal amount of the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion of such Allowed Priority Tax Claim from the Effective Date through the date of payment at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which Confirmation occurs, or (ii) such other treatment as to which such Holder and the Debtors shall have agreed upon in writing; provided, however, that the Debtors shall have the right to prepay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.  Holders of Priority Tax Claims will be paid in full on account of such Claims and are not entitled to vote on this Plan.

### B.      Debtor Claims

#### a)  Class 1A – Secured Claim of Federal National Mortgage Association against The Lauravin Luxury Apartment Homes III L.L.C.

The senior secured claim of Federal National Mortgage Association ("Fannie Mae") shall be allowed in the amount of $1,560,026.91, plus post-petition interest at the default rate and legal fees/expenses as permitted by the Fannie Mae Loan Documents, less payments made to Fannie Mae after the Petition Date.  The Debtor shall be permitted to reinstate the Fannie Mae claim in accordance with 11 U.S.C. § 1124 by curing all defaults on or before December 15, 2023. To the extent that a foreclosure auction has been scheduled and expenses associated with the foreclosure incurred prior to any reinstatement, the costs associated with such auction, including advertising, fees and expenses incurred by the substitute trustee, shall be paid as part of any cure and reinstatement. Fannie Mae shall retain its Liens pending reinstatement or payment of its Allowed Class 1A Claim.  The Class 1A Claim is an impaired claim.  The Holder of the Allowed Class 1A Claim is entitled to vote to accept or reject the Plan.

Until Fannie Mae's claim is satisfied, The Lauravin Luxury Apartment Homes III L.L.C., and its managing member Richard Cunningham, shall ensure that real estate taxes and insurance premiums associated with the Lauravin Property are timely paid.  The Debtor shall pay interest payments to Fannie Mae at the non-default rate on the 15th day of every month after the Confirmation Date (although the amounts due to Fannie Mae shall accrue at the default rate).  In the event that any payment is missed, the Debtor shall have a ten day right to cure.  The failure to make any such payments shall be a default authorizing Fannie Mae  to exercise any and all rights and remedies pursuant to the Fannie Mae Loan Documents.

The automatic stay and any injunction under the Plan shall be deemed modified on November 1, 2023 to permit  Fannie Mae to commence foreclosure proceedings against the Property, but no foreclosure auction shall be held prior to December 16, 2023.

To the extent that the Fannie Mae loan is reinstated prior to any foreclosure auction, the Debtor shall, no later than December 31, 2023, either (i) complete all repairs at the Property such that the Property may be leased to tenants or (ii) refinance the Property and pay the indebtedness to Fannie Mae in full.  If the Debtor fails to do so, Fannie Mae shall be permitted to exercise all rights and remedies under the Fannie Mae Loan Documents.

### b) Class 1B – Secured Claim of WCP Fund I LLC against The Lauravin Luxury Apartment Homes III L.L.C.

The Debtors shall execute a new unsecured promissory note in favor of WCP Fund I LLC, in the amount of $3,000,000.00 (the "Unsecured Debtor Note"). The Unsecured Debtor Note shall accrue interest at the rate of two percent (2%) per annum, compounded annually, and shall be payable in full not later than the first day of the sixty first (61st) month after its making. If paid in full on or before the first day of the thirty seventh (37th) month after its making, the Unsecured Debtor Note shall be payable in a discounted sum equal to the full amount then due and owing thereunder less the sum of $2,500,000.00.

To the extent any Debtor Affiliate (i) successfully confirms a plan of reorganization in the United States Bankruptcy Court for the District of Columbia, on or before the date of making of the Unsecured Debtor Note; (ii) incurs an obligation comparable to the Unsecured Debtor Note, in sum and payment terms, pursuant to such confirmed plan of reorganization; (iii) incurs said obligation to WCP Fund I LLC; and (iv) secures the vote of WCP Fund I LLC in favor of confirmation of such Debtor Affiliate's subject plan of reorganization; then said Debtor Affiliate – or any combination of Debtor Affiliates – may co-sign the Unsecured Debtor Note, and thereby create a singular joint obligation to WCP Fund I LLC, in lieu of creating a multiplicity of comparable obligations to WCP Fund I LLC.

On the third business day after the Effective Date, any lien of the WCP Fund Entity on the Lauravin Property shall be deemed released and the WCP Fund Entity shall file a certificate of satisfaction to that effect.

The provisions of this Section II(B)(b) shall be in full and complete satisfaction of WCP Fund I LLC's Allowed Secured Claim against The Lauravin Luxury Apartment Homes III L.L.C.

### c) Class 1C – Unsecured Claims against The Lauravin Luxury Apartment Homes III L.L.C.

On the Distribution Date, The Lauravin Luxury Apartment Homes III L.L.C. shall pay any amounts left over from the Lauravin Reserve after payment of Administrative and Priority Tax Claims, to holders of General Unsecured Claims in full and complete satisfaction of General

Unsecured Claims. The Class 1C Claim is impaired.   Holders of Allowed Class 1C Claims are entitled to vote to accept or reject the Plan.

### d)  Class 2A – Secured Claim of WCP Fund I LLC against 1609 17th Place Flats LLC

In full and complete satisfaction of the Allowed Secured Claim of WCP Fund I LLC against 1609 17th Place Flats LLC, at a time of WCP Fund I LLC's choosing, after seven days notice,  1609 17th Place Flats LLC shall convey the 1609 Property to WCP Fund I LLC or any other entity to which WCP Fund I LLC directs that 1609 17th Place Flats LLC makes such transfer.  WCP Fund I LLC shall be responsible for all costs of effectuating such transfer, including payment of all required taxes.

### e)  Class 2B – Second Secured Claim of WCP Fund I LLC against 1609 17th Place Flats LLC

In full and complete satisfaction of the Allowed Second Secured Claim of WCP Fund I LLC against 1609 17th Place Flats LLC, at a time of WCP Fund I's choosing, after seven days notice,  1609 17th Place Flats LLC shall convey the 1609 Property to WCP Fund I LLC or any other entity to which WCP Fund I directs that 1609 17th Place Flats LLC makes such transfer. WCP Fund I LLC shall be responsible for all costs of effectuating such transfer, including payment of all required taxes.

### f)  Class 2C – Unsecured Claims against 1609 17th Place Flats LLC

On the Distribution Date, 1609 17th Place Flats LLC shall pay any amounts left over from the 1909 Reserve after payment of Administrative and Priority Tax Claims, to holders of General Unsecured Claims in full and complete satisfaction of General Unsecured Claims. The Class 2C Claim is impaired.   Holders of Allowed Class 2C Claims are entitled to vote to accept or reject the Plan.

### g)  Class 3 – Equity Interests

Holders of Class 3 Interests shall retain their interests under the Plan.  Holders of Class 3 Interests will not receive any payments unless and until all Holders of Allowed Class 1 and Class 2 Claims are paid in full.  Class 3 Interests are unimpaired under the Plan.   The Holders of Class 3 Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE III.   <u>ACCEPTANCE OR REJECTION OF PLAN</u>

### A.       Impaired Classes of Claims Entitled to Vote

Subject to the applicable provisions of Article II of this Plan, the votes of Holders of Claims and Interests in Impaired Classes who will receive or retain property on account of their Claims or Interests and who are entitled to vote will be solicited for acceptance or rejection of this Plan. Classes of Claims or Interests that have been designated in this Plan as unimpaired are not

entitled to vote with respect to the Plan.

### B.        Confirmation Pursuant to Bankruptcy Code Section 1129(b)

To the extent that any impaired class of Claims does not accept this Plan, the Debtors hereby request confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code.

### C.        Reservation of Rights Relating to Plan

The Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan or any Exhibit or schedule, including the right to amend or modify this Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

### D.        Elimination of Classes

Any Class that does not contain any Allowed Claims or Interests, or any Claims or Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.    MEANS FOR IMPLEMENTATION OF PLAN

### A.        Revesting of Property

On the Effective Date, all property of the Estates shall revest in the Debtors, subject to the Liens and other obligations expressly created or preserved by this Plan, but otherwise free and clear of all other liens, claims, interests and encumbrances.

### B.        Lauravin Reinstatement or Refinance

To generate sufficient funds to assist in consummating this Plan, The Lauravin Luxury Apartment Homes III L.L.C. will either borrow funds to reinstate its loan from Fannie Mae no later than December 15, 2023 or shall refinance its debt to Federal National Mortgage Association by December 31, 2023 (the "Lauravin Refinance").

### C.        Conveyance of 1609 Property

At any time of WCP Fund I's choosing, 1609 17th Place Flats LLC shall convey the 1609 Property to WCP Fund I LLC or any other entity to which WCP Fund I directs that 1609 17th Place Flats LLC makes such transfer.  WCP Fund I LLC shall be responsible for all costs of effectuating such transfer, including payment of all required taxes and any required US Trustee fees.

### D.        Reserves

In order to facilitate the confirmation of this Plan, within 10 days of the Confirmation Date, WCP Fund I LLC shall pay the 1609 WCP Reserve and Richard Cunningham shall pay the

Lauravin Reserve  to undersigned counsel for the Debtors to be held as security for the Debtors' obligations under this Plan (and not as a retainer for fees).

### E.        Exemption From Transfer And Recordation Taxes

Pursuant to Bankruptcy Code section 1146(a), any transfers from the Debtors to any Entity pursuant to this Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### F.        Releases of Record.

Upon the request of the Debtors, any Entity that is entitled to receive any distribution under this Plan, or whose Lien is extinguished or modified pursuant to this Plan, shall execute and deliver such documents and instruments as are necessary to release, modify, or preserve of record any Lien, to the extent such Lien is extinguished, modified, or preserved pursuant to this Plan. Notwithstanding any provision in this Plan, the Debtors shall not be required to make any distribution, or deliver any document or instrument, to such Entity, unless and until such Entity has complied with this obligation.   The obligations set forth in this paragraph shall not be waived by any action or inaction of the Debtors, including, without limitation, commencement of distributions to the affected Entity.

### G.        Claims and Causes of Action

Except as expressly set forth in this subsection, all Causes of Action owned by the Debtors, including, without limitation, Avoidance Actions shall be preserved.

### H.        Preservation of Priority

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, all Claims, including, without limitation, Administrative Claims, shall retain their respective priority under the Bankruptcy Code and applicable non-bankruptcy law, unless expressly modified by the terms of this Plan.

### I. Governing Documents

The operating agreements of the Debtors shall remain in place.

### J.        Management

The managing member of the Debtors is Richard Cunningham.  Richard Cunningham is proposed to continue serving as managing member without compensation.

# ARTICLE V.    <u>DISTRIBUTIONS</u>

### A.    Bar Date

Any Claim in existence as of the Petition Date that is not scheduled by the Debtors, or that is scheduled as contingent, unliquidated, or disputed, or that varies in amount, nature, or priority from that stated in the Debtors' schedules (as amended), must have been asserted, if at all, by the filing of a Proof of Claim with the Bankruptcy Court.  Such Proof of Claim must have been filed with the Bankruptcy Court no later than the Claims Bar Date.  **The failure to file a Proof of Claim by the Claims Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtors from any liability, responsibility, or obligation with respect to such Claim.  Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Claim that is not filed by the Claims Bar Date.  The Debtors shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed proof of claim.**

### B.    Distributions on the Initial Distribution Date

On the Distribution Date, the Debtors will make payments to the holders of general unsecured claims, from the funds obtained through the Reserves, to the extent any such funds are available.

### C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### a)    *Delivery of Distributions in General.*

Distributions to each Holder of an Allowed Claim shall be made by the Debtors (a) at the addresses set forth on the proofs of Claim filed by such Holder, (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of Claim, (c) at the address reflected in the Schedules if no proof of Claim has been filed and the Debtors have not received a written notice of a change of address, (d) at the address set forth in the other records of the Debtors at the time of the Distribution, or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.  Distributions shall be made in accordance with the terms of this Plan.  In making Distributions under this Plan, the Debtors may rely upon the accuracy of the claims register maintained in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court allowing or disallowing Claims in whole or in part.

#### b)    *Undeliverable and Unclaimed Distributions.*

If the Distribution to any Holder of an Allowed Claim is made in accordance with this Plan and is returned to the Debtors as undeliverable or is otherwise unclaimed within sixty (60) days following such Distribution, such Distribution may be cancelled and the Debtors shall be relieved of any and all obligations to make further Distributions to such Holder.  Any Holder of an Allowed Claim that does not timely negotiate any payment made pursuant to this Plan shall be

deemed to have forfeited its Claim and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors and their Estates, and their respective agents, attorneys, representatives, employees, or independent contractors, and/or any of their property.  Nothing contained in this Plan shall require the Debtors to attempt to locate any Holder of an Allowed Claim; provided, however, that in its sole discretion, the Debtors may take such other action as the Debtors deems appropriate to locate the Holder of an Allowed Claim.

### D.        Means of Cash Payment

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made, on and after the Effective Date, at the option and in the sole discretion of the Debtors by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors.  In the case of foreign creditors, Cash payments may be made, at the option of the Debtors, in such funds and by such means as are necessary or customary in a particular jurisdiction.

### E.        Interest on Claims

Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of an Allowed Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### F.        Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Debtors shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All Entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.  For example, with respect to any employee-related withholding, if the Debtors are obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax and other payroll obligations, the Debtors may withhold a portion of the Distributions allocated to the Holder of an Allowed Claim that is a present or former employee, whether or not such Distributions are in the form of Cash, in such amount as is determined necessary to satisfy such Holder's tax and other payroll obligations with respect to the Distributions.  Notwithstanding the foregoing or any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Debtors for the payment and satisfaction of such withholding tax obligations or such tax obligation that

would be imposed upon the Debtors in connection with such Distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Article V.E.2 of this Plan.

### G.        Setoffs

#### 1. *By the Debtors*

Except as otherwise provided in this Plan, the Debtors may, pursuant to Bankruptcy Code sections 553, 558, or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan with respect to such Claim, Claims of any nature whatsoever that the Debtors may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim that the Debtors may have against such Holder.

#### 2. *By Non-Debtors*

Unless otherwise stipulated in writing by the Debtors, or asserted pursuant to a timely filed Proof of Claim or as expressly provided for by the terms of the agreement underlying any timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Estate (an "Estate Claim") must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time it answers such Estate Claim, or such right of setoff, subrogation, or recoupment will be deemed waived and forever barred. Notwithstanding the foregoing, nothing herein shall affect the setoff rights of any taxing authority.

### H.        Procedure for Treating and Resolving Disputed, Contingent, and/or Unliquidated Claims

#### 1. *Objection Deadline; Prosecution of Objections*

Except as set forth in this Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Bankruptcy Court. If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtors but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in the Chapter 11 Case, or to such Entities as the Bankruptcy Court shall order. The filing by the Debtors of an adversary proceeding or other legal action against the Holder of any Claim shall constitute a dispute as to such Claim for the purposes of distributions under this Plan. The provisions of this Plan relating to the Claims Objection Deadline is intended solely to facilitate orderly distributions with respect to Claims. Notwithstanding anything to the contrary herein, the failure of the Debtors to file an objection to

a Claim by the Claims Objection Deadline shall not constitute a determination of the validity of such Claim for purposes of res judicata, collateral estoppel, or any other similar doctrine, shall not constitute an admission by the Debtors with respect to any Claim, or otherwise constitute a bar against the Debtors pursuing any action at law or in equity against the Holder of a Claim, or raising any defense against the assertion of any Claim.

### 2. *No Distributions on Disputed Claims*

Notwithstanding any other provision of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Debtors do not dispute at the time and in the manner that the Debtors make Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan.

### 3. *Distributions on Allowed Claims*

Payments and Distributions to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of this Plan that govern Distributions to such Holders.

### 4. *De Minimis Distributions*

Except as otherwise expressly provided in this Plan, the Debtors shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim does not constitute a final Distribution to such Holder and such Distribution has a value less than $10.00.

### I. Fractional Dollars

Any other provision of this Plan notwithstanding, the Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

## ARTICLE VI.   CONTRACTS AND UNEXPIRED LEASES

### A.        Assumption and Rejection

The Assumption List attached as Exhibit A hereto identifies the Executory Contracts and Unexpired Leases that the Debtors seek to assume or reject under this Plan.  The Debtors reserve the right to modify the Assumption List at any time prior to the Effective Date, including, without limitation, to change the disposition of an Executory Contract or Lease, the cure amount, or any other matter addressed by the Assumption List.  The Assumption List may be modified by the Debtors by filing an amendment to the Assumption List with the Court at any time prior to

the Effective Date.  The Assumption List shall identify the Executory Contract or Lease that the Debtors seek to retain or to sell pursuant to this Plan.  The Assumption List additionally shall specify the amount of any cure payment that is required in order to cure monetary defaults with respect to any assumed Executory Contract or Lease.   Unless otherwise ordered by the Bankruptcy Court, all Persons shall be bound by the cure amounts stated in the Assumption List as in effect at the time of entry of the Confirmation Order.

The Assumption List shall provide for the assumption, rejection, or provisional rejection of each Executory Contract or Lease.  Except to the extent of any modification of the Assumption List, (i) the Executory Contract or Lease shall be deemed assumed on the Effective Date if the Assumption List specifies that such Interest shall be assumed; (ii) the Executory Contract or Lease shall be deemed rejected on the Effective Date if the Assumption List specifies that such Interest shall be rejected; and (iii) the determination of assumption or rejection shall be deferred, as set forth below, pending the resolution of rejection damage claims if the Assumption List specifies that such Interest is provisionally rejected.

Unless the counter party to any Executory Contract or Lease serves and files a timely objection to the treatment specified in the Assumption List, the Assumption List (as it may be modified by the Debtors) shall be binding.  Without limiting the generality of the foregoing, absent a timely objection, no cure claim in excess of the amount specified in the Assumption List and no objection to any specified assignment shall be entertained.  Any objection that is timely filed shall be considered at the Confirmation Hearing, or at such other hearing as the parties may agree or the Court may establish.

Except to the extent that the Debtors file an amendment to the Assumption List fewer than twenty one (21) days prior to the commencement of the Confirmation Hearing, all objections to the Assumption List shall be served and filed no later than fourteen (14) days following service of the Disclosure Statement.  In the event that the Debtors file an amendment, or amendments, to the Assumption List, any objection to the proposed amendment shall be served and filed no later than fourteen (14) days following the filing of such amendment.  Absent agreement of the Debtors and the affected counterparty, or order of the Court, the hearing with respect to such amendment shall not be scheduled earlier than twenty eight (28) days following the filing of the amendment.

### B.      Rejected Contracts and Leases

Except with respect to Executory Contracts or Leases dealt with in the Assumption List, as set forth above, or as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all pre-petition executory contracts and unexpired leases to which any of the Debtors is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) is the subject of a pending motion to assume or reject on the Confirmation Date, or (d) is an insurance agreement of the Debtors; provided, however, that the foregoing reference to insurance agreements shall not

constitute an admission by the Debtors that any insurance agreement is an executory contract or that the Debtors have any liability thereunder.  Except to the extent that the Debtors specifically have agreed, or may agree, in writing, the rejection of any executory contract or unexpired lease, including, without limitation, shall not constitute a waiver or release of any property right, claim or cause of action belonging to the Debtors, all of which are expressly reserved.

### C.      Bar to Rejection Damages

**If the rejection of an executory contract or unexpired lease pursuant to Article VI.B. of this Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or their Estates, or their successors, assigns, or properties unless a proof of Claim is filed and served on the Debtors within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by this Plan or the Bankruptcy Court.**

### D.      Assumed Contracts and Leases

To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, those executory contracts and unexpired leases identified in such documents as being assumed.  Unless otherwise specified in the Assumption List, the Debtors will cure any monetary defaults with respect to Assumed Executory Contracts or Leases on or before the Distribution Date.

## ARTICLE VII.  <u>CONFIRMATION AND CONSUMMATION OF THIS PLAN</u>

### A.      Conditions to Confirmation

In addition to any other conditions as may be imposed by law, the following are conditions to confirmation of the Plan:

1.   A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125 shall have been entered by the Bankruptcy Court;

2.   A proposed Confirmation Order in form and substance, reasonably acceptable to the Debtors;

3.   Approval of all provisions, terms and conditions hereof in the Confirmation Order; and

### B.      Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article VII.C of the Plan:

1.      The Confirmation Order shall have been entered in the Chapter 11 Case and shall provide that the Debtors are authorized to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

2.      The Confirmation Order shall have become an unstayed Final Order, except that the existence of an appeal absent a stay pending appeal shall not delay the Effective Date;

3.      All Exhibits shall be, in form and substance, reasonably acceptable to the Debtors, and shall have been executed and delivered by all parties' signatory thereto;

4.      The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan;

5.      All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

## C.      Waiver of Conditions

Each of the conditions set forth in Article VII.A and or VII.B of this Plan, except for entry of the Confirmation Order, as set forth in Article VII.B.1 of this Plan, may be waived in whole or in part by the Debtors.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## D.      Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not occur, the Debtors reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement or treatment of Claims provided for in this Plan be null and void.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtors may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions as may be approved by the Court either before or after the expiration of such 30-day period.

## ARTICLE VIII. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### A.        Professional Fee Claims

#### 1. *Final Fee Applications*

Final Fee Applications shall be filed no later than ninety (90) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  To the extent Professional Fee Claims have been allowed prior to the Effective Date, such Claims shall be paid on the Effective Date (unless otherwise agreed in writing between the Debtors and the affected Professional).  To the extent that a Professional Fee Claim is allowed on or after the Effective Date, such Professional Fee Claim shall be paid within ten (10) business days following the entry of the order allowing such Claim (unless otherwise agreed in writing between the Debtors and the affected Professional).  Any Professional Fee Claims that are not paid in accordance with the foregoing by agreement between the Debtors and the affected professional shall be paid out of the proceeds of the sale of the Thoburn Assemblage pursuant to the Pulte Contract.

#### 2. *Employment of Professionals after the Effective Date*

From and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate, and Professionals shall be compensated without the requirement of application to, or order of, the Bankruptcy Court. Any Professional Fee Claims arising after the Effective Date shall be paid out of the Reserves and existing retainer.

### B.        Other Administrative Claims

All other requests for payment of an Administrative Claim arising from and after the Petition Date up to and through the Effective Date, other than Professional Fee Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtors no later than the Administrative Claims Bar Date.  Unless the Debtors object to an Administrative Claim, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.  All allowed Administrative Claims, other than Administrative Fee Claims, shall be paid in accordance with Article II.B.1 of this Plan.

## ARTICLE IX.    EFFECT OF PLAN CONFIRMATION

### A.        Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns.

### B.        Discharge of the Debtors

Pursuant to Bankruptcy Code section 1141(d)(1), and subject to the occurrence of the Effective Date, Confirmation will discharge all Claims against the Debtors except for the obligations and Liens expressly created or preserved by this Plan.

### C.        Injunction

**EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER SHALL PROVIDE, AMONG OTHER THINGS, THAT FROM AND AFTER THE EFFECTIVE DATE ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, ITS ESTATE, OR ANY OF ITS PROPERTY ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS, EXCEPT AS SET FORTH IN ARTICLE V.J. OF THIS PLAN; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN OR THE CONFIRMATION ORDER.**

### D.        Indemnification Obligations

#### 1. *Prospective Indemnification Obligations*

To the fullest extent permitted under law, the Debtors shall indemnify their present partners, managers, attorneys, financial advisors, and/or other professionals from and against all Claims, Causes of Action, losses, and damages, including, without limitation, attorneys' fees and expenses, incurred by any Released Party arising from, on account of, or in connection with acts or omissions occurring, or alleged to have occurred, in connection with the Bankruptcy Case, the operation of the Debtors' business, the formulation of this Plan, the consummation of this Plan, and any other matter pertaining to the efforts to reorganize the business, legal, and financial affairs of the Debtors.

#### 2. *Existing Indemnification Obligations*

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtors have pursuant to their operating or organizing documents, contracts,

instruments, agreements, certificates of incorporation, by-laws, comparable organizational documents, or any other documents, or applicable law, shall be rejected as of the Effective Date, to the extent executory.  Nothing in this Plan shall be deemed to release the Debtors' insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtors, to the extent of available coverage.

### E.        Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.  Upon the Effective Date, the injunction provided in Article IX.C shall apply.

### ARTICLE X.      <u>RETENTION OF JURISDICTION</u>

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan, and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

2.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

3.      Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.      Effectuate performance of and payments under the provisions of this Plan;

5.      Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to the Chapter 11 Case, this Plan, or any Plan Document;

6.      Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other

agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

7.    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

8.    Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

10.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11.    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

13.    Except as otherwise limited herein, recover all Assets of the Debtors and property of the Estate, wherever located;

14.    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

15.    Hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

16.    Hear and determine any Causes of Action;

17.    Hear and determine all disputes involving the existence, nature, or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to this Plan;

18.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

19.    Hear and determine all matters related to the Lauravin Refinance;

20.    Hear and determine all matters related to the transfer of the 1609 Property;

21.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

22.    Enforce all orders previously entered by the Bankruptcy Court;

23.    Dismiss the Chapter 11 Case; and

24.    Enter a final decree closing the Chapter 11 Case.

## ARTICLE XI.    MISCELLANEOUS PROVISIONS

### A.    Modifications and Amendments

The Debtors may alter, amend, or modify this Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of this Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### B.    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, then the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### C.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Entity.

### D.        Payment of Statutory Fees

All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date by the Debtors.  All such fees that become due and payable thereafter by the Debtors shall be paid by the Debtors when due.  The Debtors shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Case is closed or converted and/or the entry of a final decree.  The Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Debtors.

### E.        Revocation, Withdrawal or Non-Consummation

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

### F.        Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtors under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, (v) facsimile transmission or (vi) e-mail, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or e-mail transmission, when actually received and telephonically confirmed by the recipient, and (d) addressed as follows:

***The Debtors:***

Justin P. Fasano (Fed Bar No. MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Tel: 301-441-2420
Fax: 301-982-9450
jfasano@mhlawyers.com
*Counsel for the Debtors*

### G. Plan Supplement(s)

Exhibits to this Plan not attached hereto shall be filed in one or more Plan Supplements. Any Plan Supplement (and amendments thereto) filed by the Debtors shall be deemed an integral part of this Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during normal business hours, by visiting the Bankruptcy Court's website at www.vaeb.uscourts.gov (PACER account required).  Holders of Claims and/or Interests may obtain a copy of any Plan Supplements upon reasonable written request to counsel for the Debtors.

### H. Exhibits

Any and all Exhibits, or other lists or schedules not filed with this Plan or accompanying Disclosure Statement shall be filed with the Clerk of the Bankruptcy Court.  Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors in accordance with Article XI.F of this Plan.

### I. Tax Reporting And Compliance

The Debtors are hereby authorized to request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

### J. Filing Of Additional Documents

On or before substantial consummation of this Plan, the Debtors reserve the right to file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: August 28, 2023            Respectfully submitted

/s/ Justin P. Fasano
Justin P. Fasano (Fed Bar No. MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Tel: 301-441-2420
Fax: 301-982-9450
jfasano@mhlawyers.com
*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

      I hereby certify that on this August 28, 2023, a copy of the foregoing was served by

CM/ECF on all parties requesting such notice.

/s/ Justin P. Fasano      
Justin P. Fasano
